UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| JEREMY DOMONICK ROBINSON | CIVIL ACTION NO. 11-cv-1640 |
| VERSUS | JUDGE FOOTE |
| JOHN MARTIN, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

### Introduction

Jeremy Domonick Robinson ("Plaintiff") is a self-represented prisoner who was formerly housed at the David Wade Correctional Center. He filed this civil action against seven defendants related to his dissatisfaction with his dental care. Before the court are a Motion for Summary Judgment by Dr. Judd Moore (Doc. 48), a Motion for Summary Judgment by the DWCC and DOC Defendants (Doc. 47), and a Motion to Dismiss Summary Judgment (Doc. 52) in which Plaintiff argues that the defense motions should be denied. For the reasons that follow, it is recommended that Plaintiff's motion be denied, Dr. Moore's motion be granted, and the DWCC/DOC motion be granted in part and denied in part.

### The Complaint

Plaintiff alleges that in August 2010 he completed a sick call request because he had extreme pain in a tooth. Dr. Moore, a contract dentist for DWCC, saw Plaintiff on September 3, 2010 and determined that Plaintiff had a hole in his tooth that exposed the root and required a root canal operation or removal of the tooth. Dr. Moore scheduled Plaintiff

an appointment with an outside oral surgeon, and he ordered Amoxicillin, an antibiotic, for Plaintiff to take for several days before the surgery to reduce the risk of infection. Complaint, ¶¶ 1-6.

After five days of waiting for the antibiotic, Plaintiff notified the pill cart officer, Lt. Huey (not a defendant) that Plaintiff had not begun to receive his 10-day prescription of Amoxicillin ordered by Dr. Moore. Lt. Huey reported this to the medical staff, which contacted Pharm-Corr, a private off-site pharmacy, and learned that the pharmacy had erroneously sent Plaintiff's medicine to the wrong housing area at the prison. ¶ 8.

Plaintiff alleges that defendant Michele Dauzat (medical administrator), Paula Millwee (head nurse), and Dr. Moore were "immediately made aware" of this mistake by the pharmacy "but intentionally delayed reordering medicine and rescheduling surgical treatment within a reasonable amount of time." ¶ 11. Plaintiff made another sick call on October 20, 2010 and complained that his "broken tooth" was causing pain and becoming worse, causing trouble eating on the right side of his mouth. He was seen by Nurse John Martin (a defendant), "but nothing was done." ¶ 13. Plaintiff returned to Dr. Moore on December 12, 2010, and Dr. Moore rescheduled his dental (surgical) appointment. ¶ 14. Plaintiff made additional sick calls on January 5, 13, and 20, 2011 and complained of extreme pain and throbbing related to his tooth. He was seen at the first two calls by Nurse Joel Williams (a defendant) and at the third by Nurse Martin; Plaintiff alleges they did nothing in response to the sick calls. ¶¶ 15-17.

Plaintiff alleges that he suffered extreme pain during this entire period, with the pain shooting into his head every time he closed his mouth. This made it difficult to eat and sleep. He was not treated for his pain throughout the four months of this experience. ¶ 18. He asks for compensatory and punitive damages, as well as other forms of relief.

**Exhaustion of Administrative Remedies**

    **A. Introduction**

Defendants argue that Plaintiff did not exhaust his administrative remedies as to any defendant except Nurse Martin. The defense is based on the statutory mandate that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The statute's reference to actions "with respect to prison conditions" is interpreted broadly and includes those actions that allege denial of medical care. Porter v. Nussle, 122 S.Ct. 983 (2002); Harris v. Hegmann, 198 F.3d 153 (5th Cir. 1999).

Lack of proper exhaustion is an affirmative defense. The DWCC/DOC defendants have squarely raised the defense in their motion. Dr. Moore does not specifically brief the defense, but he states in ¶ 1 of his motion that he joins in his co-defendants' motion and incorporates their arguments. The court finds that sufficient to raise the defense.

    **B. No "Name all Defendants" Requirement; the ARP Process**

Plaintiff did file a grievance, DWCC-10-1202, and he completed the two-step administrative process. The DWCC/DOC defendants argue that the claims against all of

them, except Nurse Martin, must be dismissed because Martin is the only one of them mentioned by name in the grievance. That argument is not well founded. Nothing in the federal statute imposes a "name all defendants" requirement. The level of detail necessary in a grievance to comply with the exhaustion requirement is determined by the prison's administrative requirements. Jones v. Bock, 127 S.Ct. 910, 922-23 (2007). A review of those requirements and Plaintiff's grievance is required to determine what claims were exhausted.

The grievance procedure for state prisoners is set forth in Louisiana Administrative Code, Title 22, Part I, § 325. The regulation provides that an offender "commences the process by completing a request for administrative remedy or writing a letter to the warden, in which he briefly sets out the basis for his claim, and the relief sought." The regulation adds that "letters or requests to the warden should be as brief as possible." The offender should "present as many facts as possible to answer all questions (who, what, when, where and how) concerning the incident."

Plaintiff filed his grievance on October 25, 2010. He wrote that more than six weeks earlier he had seen the dentist for an ongoing problem, and Dr. Moore had placed him on the hospital list to have a broken tooth removed. Plaintiff described how Dr. Moore told him that he would prescribe an antibiotic to take before the surgery, and it should arrive in "a few days." Plaintiff wrote that, about four days later, he asked Sgt. Sanford (not a defendant) if his medicine was on the pill cart, but it was not. On the next shift, Plaintiff asked Lt. Huey (not a defendant) if his medicine was on the cart, and it was not. Later that week, Plaintiff

wrote, he was able to talk to Nurse John Martin (a defendant) about not receiving his medicine. Martin allegedly said, "I guess it never came yet" and walked off.

Plaintiff alleged that he continued to make inquiries of Sgt. Sanford and Lt. Huey, but they told him his medicine was on the list but must not have arrived yet. He spoke again with Nurse Martin and explained that he needed the medication because the gums around the problem tooth were swelling and making it hard for him to eat due to pain. Martin allegedly responded that Plaintiff should have complained about this six weeks earlier, and Martin told Plaintiff that he was not going to "refill" the medicine. Plaintiff replied that he could not refill something Plaintiff had never received. Martin told him to complete another sick call if he really wanted the medicine, then walked away laughing. Plaintiff wrote that he was experiencing extreme pain and swollen gums but receiving nothing for relief despite his frequent complaints to the medical staff.

The warden's designee issued a first-step response to the grievance about 15 days after it was filed. The response recounted that Dr. Moore's order for Amoxicillin was noted by the nurse and sent to the pharmacy, but the pharmacy mistakenly sent the medication to another housing area. The response stated that measures had been taken to see that such incidents will be rare or eliminated. It was noted that there were no recorded sick calls from Plaintiff indicating he spoke with the nurse about his medication. He was reminded that he must make sick call so that his medical record and medication lists can be reviewed and resubmitted if the medication had not been filled. The response stated that the medication would be reordered and delivered when it arrived.

Plaintiff sought step-two review from the Secretary. He wrote that he "went through routine sick call and was denied medical assistance." He complained that it had taken from September to (by then) November to receive his medicine despite officers being notified of the problem. A note in the administrative record from Lt. Huey stated that after Plaintiff complained he determined medication had been ordered but had not arrived, so he informed medical, the medication was reordered, and Plaintiff received the medication "as soon as it was available." The response does not include the dates of any of these events.

The Secretary's designee denied the grievance at step two. He found that medical staff had worked diligently with headquarters and the pharmacy to get the unavoidable concern addressed. Plaintiff's medical record showed no adverse reaction and indicated he had since received his medication. The medical care he had received was deemed adequate.

### C. The Fair Opportunity Requirement

As noted above, the Supreme Court held in Jones v. Bock that there is no requirement that any particular official be named in the grievance. The Fifth Circuit in Johnson v. Johnson, 385 F.3d 503 (5th Cir. 2004) held that a grievance must provide administrators with a "fair opportunity under the circumstances to address the problem that will later form the basis of the suit." Id. at 522. That will sometimes require that the grievance identify individuals who are connected with a problem, but the grievance may also sufficiently identify a person even if it does not provide an actual name. The Court gave as an example a reference to "the guards in the shower room" on a certain date. Id. 522-23. The Fifth Circuit has continued to apply Johnson's "fair opportunity" standard after Jones v. Bock. See

Garcia-Comacho v. Maldonado, 2007 WL 2228623 (5th Cir. 2007). The same rule applies to determining which particular claims or incidents had been exhausted.

Plaintiff's complaint alleges that the denial of his medication continued into January 2011, long after he filed his grievance in October 2010. He was not required to file a new grievance every time his inquiry about his medicine was unsuccessful. Prisoners need not continue to file grievances about a continuing issue. Johnson, 385 F.3d at 520-21 (no need to file repeatedly about ongoing, frequent attacks).

### D. Dr. Judd Moore

The claims against Dr. Moore were not properly exhausted. The grievance mentioned only that Dr. Moore examined Plaintiff and prescribed the medication. The grievance went on to complain that the medication did not arrive despite frequent inquiries to the medical staff and corrections officers. There is no suggestion in the grievance, however, that Plaintiff complained that Dr. Moore did anything improper or in any way contributed to the delay in the receipt of the medication. Plaintiff now asserts in his judicial complaint that Dr. Moore was aware of the delay but intentionally delayed reordering the medicine. There is no hint of such an assertion in the grievance, so the grievance did not give prison officials a fair opportunity to address such a claim before the filing of a lawsuit. All claims against Dr. Moore should be dismissed.

### E. Warden Goodwin and Secretary Leblanc

Plaintiff names in his judicial complaint DWCC Warden Jerry Goodwin and DOC Secretary James LeBlanc. His only allegation against them is found in paragraph 25, where

he alleges the two supervisory officials were made aware of Plaintiff's serious medical condition and failed to properly train or correct their employees. No factual support is offered to support the assertions.

The conclusory assertion against supervisory officials who played no direct role in the principal issues is unlikely to have stated a claim on which relief can be granted.[1] But that issue need not be reached because Plaintiff did not exhaust his administrative remedies with respect to these two defendants. There was no mention of them in the grievance or suggestion that they had anything to do with the delay or any other aspect of the claims presented in the grievance. All claims against them should be dismissed.

### F. Dauzat, Millwee, Williams, and Martin

The other defendants named in the judicial complaint are nurses Joel Williams and John Martin, head nurse Paula Millwee, and medical administrator Michele Dauzat. Only John Martin is mentioned specifically in the grievance, but the grievance does complain that

---

[1]

The requirements to establish the liability of a supervisor are demanding. Estate of Davis v. City of North Richland Hills, 406 F.3d 375, 381 (5th Cir. 2005). And supervisory officials are entitled to defer to the judgment of medical professionals. See, e.g., Vasquez v. Dretke, 226 Fed. Appx. 338 (5th Cir. 2007) (warden and director of clinical services "were not deliberately indifferent" when "they deferred to the judgment of medical professionals by denying [a prisoner] dentures") and Garza v. Chaney, 2007 WL 4367882, *6 (S.D. Tex. 2007) ("it was reasonable for Assistant Warden Mundy to rely on the medical department to handle the medical needs of the inmates").

Secretary LeBlanc's designee handled the step-two grievance appeal. The designee's handling of the matter does not amount to personal involvement by LeBlanc sufficient to allow Section 1983 liability against LeBlanc. Porter v. Epps, 659 F.3d 440, 448 (5th Cir. 2011).

the "medical staff" did not supply Plaintiff's medical needs despite his frequent complaints to Martin and others about the delay. This is similar to the "guards in the shower room" example that the Fifth Circuit gave in Johnson. The grievance gave prison officials a fair opportunity to address all problems related to the delay in obtaining the medication. An examination of the role of the medical staff other than just Nurse Martin would be well within the scope of a reasonable investigation of that grievance. The court finds that Plaintiff did adequately exhaust his claims with respect to Dauzat, Millwee, Williams, and Martin.

**The Eighth Amendment Claim**

    **A. Deliberate Indifference Standard**

Defendants also challenge Plaintiff's Eighth Amendment claim on the merits. For a convicted prisoner or pretrial detainee to prevail on a claim that his medical care (or lack of care) violated the Amendment, he must prove that prison or jail officials were "deliberately indifferent" to his "serious medical needs." Estelle v. Gamble, 97 S.Ct. 285, 291 (1976); Hare v. City of Corinth, 74 F.3d 633, 643 (5th Cir. 1996) (en banc). Deliberate indifference encompasses only unnecessary and wanton infliction of pain repugnant to the conscience of mankind. Estelle, 97 S.Ct. at 291-92. Disagreement with the diagnostic measures or methods of treatment afforded by prison officials does not state a constitutional claim for indifference to medical needs. Norton v. Dimazana, 122 F.3d 286, 292 (5th Cir. 1997).

    **B. Challenge to Adequacy of the Allegations**

Defendants first argue that Plaintiff did not allege specific facts to show that they violated a clearly established constitutional right, sufficient to overcome a qualified

immunity defense. Plaintiff alleged that he was experiencing extreme pain in his tooth, which Dr. Moore recommended be treated with antibiotics followed by a root canal or extraction. The antibiotics did not arrive promptly. Plaintiff alleged that Dauzat and Millwee were aware of this but "intentionally delayed reordering medicine and rescheduling surgical treatment within a reasonable amount of time." Complaint, ¶ 11. Plaintiff alleged that the delay had "now lasted for at least 4 months" despite multiple sick call requests to medical describing how the delay had exacerbated his pain. ¶ 12. Those allegations are adequate to state an actionable claim against defendants Dauzat and Millwee, as they are depicted as intentionally ignoring and delaying the receipt of medication and surgical treatment needed to alleviate an extremely painful dental condition. Deliberate indifference is an extremely high standard, but allegations that a medical staffer ignored multiple complaints of serious pain and refused to look into missing prescribed medication is enough to meet the standard.

Plaintiff alleges that he made sick calls and spoke to Nurse Martin on October 20, 2010 and January 20, 2011. He says he complained that his broken tooth was "still stuck in his gums" so that his pain was becoming worse and causing him trouble eating. He complained at the second sick call that he was "in extreme pain with tooth stuck in gums plus it now split in half and is loose," but Martin did nothing. ¶¶ 13 and 17.

Plaintiff alleged that he made a sick call with Nurse Joel on January 5 and 13, 2011. He complained that "the nerve inside the hole of his teeth is painfully throbbing cause

irritation and made his mouth sore," and that he was experiencing "irritation and pain worsening and now swelling of gums," but Joel did nothing. ¶¶ 15-16.

The allegations against the two nurses are sufficient to withstand pleadings review and overcome the qualified immunity defense. Plaintiff alleged that he suffered extreme pain over the course of four months. During that time, he alleges speaking with each of these nurses on two occasions and describing his serious pain, after which they did nothing. Those allegations are sufficient to not be dismissed on their face as not stating a claim. They must be tested by more substantive means.

### C. Summary Judgment Challenge

Defendants do attempt a more substantive attack on the allegations by their motion for summary judgment. They have not, however, offered affidavits from themselves or any other persons with personal knowledge of the medical events at issue. They have merely offered an unsworn set of medical records that they argue should defeat the complaint. The handwriting and abbreviations in the records are sometimes difficult to understand, so it would be beneficial to have an affidavit from a nurse or physician to explain in plain English what medical care is reflected by the records.

Defendants represent that the records show that the medication was reordered on November 3, 2010, received four days later, and began to be administered on November 9, 2010. They assert that "[t]he State's first 'notice'" Plaintiff did not receive his antibiotic was when he filed his grievance on October 25, 2010." That may be their contention, but Plaintiff has alleged that he notified staff members of the missing medicine on several occasions well

before he filed his grievance. If Defendants wish to rely upon such factual assertions, they need to meet the complaint with affidavits or other competent summary judgment evidence. Statements in a memorandum filed by counsel are not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

Defendants argue that Plaintiff waited five weeks after the medicine was prescribed to make sick call, merely asked to be put back on the dental call list, and did not report complaints of pain or mention the antibiotic. These arguments are based on what defendants glean from the medical records they prepared, but the arguments are not adequate to overcome Plaintiff's specific allegations that he made numerous complaints about the missing medication and his pain. Prison medical records are not the universe of relevant facts in a deliberate indifference claim. Defendants have not presented sufficient competent evidence to show that Plaintiff's claims against the medical staff defendants must be dismissed.

Accordingly,

**IT IS RECOMMENDED** that (1) Plaintiff's **Motion to Dismiss Summary Judgment (Doc. 52)** be **denied**, (2) Dr. Moore's **Motion for Summary Judgment (Doc. 48)** be **granted** and all claims against Dr. Judd Moore be **dismissed**, and (3) the DWCC/DOC defendants' **Motion for Summary Judgment (Doc. 47)** be **granted in part** by dismissing all claims against James LeBlanc and Jerry Goodwin and **denied** in all other respects. Left to be resolved by other means are the Eighth Amendment claims against John Martin, Joel Williams, Paula Millwee, and Michele Dauzat.

## Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 23rd day of March, 2015.



Mark L. Hornsby
U.S. Magistrate Judge